CHARLES C. FIELD and THOMAS W. FIELD, *vs.*
THE PRESIDENT AND DIRECTORS OF THE IN-
SURANCE COMPANY OF NORTH AMERICA.

In all contracts of insurance the seaworthiness of the vessel is presumed until the contrary be shown, but when shown the conclusion of law is, that the policy never attached.

The insurers may show the unseaworthiness of the vessel in various modes; if there be no stress of weather to occasion a leak, and the vessel springs a-leak soon after she starts on the voyage, the presumption arises that she was not seaworthy.

In this case there was no direct proof of the seaworthiness of the vessel, and no proof of stress of weather, but the goods were found saturated with water and seriously damaged. The court below granted a prayer that the plaintiffs were not entitled to recover, "because they had offered no testimony of any loss by perils of the seas within the terms of the policy." HELD:

That this instruction was erroneous, because it assumes that the damage was occasioned by a leak to be ascribed to the defectiveness of the vessel, and to no other cause. Though the jury would probably have found the fact as assumed, yet the court erred in taking that question from their consideration.

The presumption of law is that the vessel was seaworthy, and whether the evidence removed that presumption, was for the jury and not for the court to determine.

APPEAL from Baltimore county court.

This was an action of *covenant*, brought by the appellants upon a *policy* of insurance for $5500, on merchandise on board the schooner Emory from Baltimore to Ware river, Virginia, underwritten by the appellee. The perils insured against were, "of the seas, fires, enemies, pirates," &c., "barratry of the master and mariners, and all other perils, losses or misfortunes that have or shall come to the hurt, detriment or damage of the said vessel, freight or property, or any part thereof. Provided, and it is expressly agreed, that the insurers shall not be liable for damage or injury to goods by dampness, or by being spotted, discolored or mouldy, unless the same be caused by actual contact of sea-water with the articles so damaged;" "but no loss or average shall in any case be paid under five per cent., unless general." The plea was general performance.

*Exception.* The plaintiffs proved the execution of the policy, which was dated the 27th of September 1847, property in the goods, that the vessel arrived in Ware river on the 28th of September 1847, having been navigated by a negro man as captain, and negro sailors as crew, with the exception of one white boy. The testimony of various witnesses, taken under a commission, was then offered, showing that when the vessel reached Ware river, several boxes of goods, (dry goods and groceries,) were found wet, much stained and damaged,

one box of sugar being entirely destroyed.    One witness states that he is confident the goods were wet with bilge water, and that he saw sprouted wheat in the folds of some of the cloths. Another that he saw in several of the boxes sprouted wheat and bilge water.    Others state that the goods were taken out of the boxes very wet and dripping with water.    It was also proved that the goods were well packed.   Some of these witnesses also stated that the goods were damaged to the extent of one-half their value.    Several of the witnesses stated, upon cross-examination, that the weather was very fine when the schooner arrived in *Ware river*, and had been so for several days previous.    The plaintiffs then offered an assessment of damages, amounting to $212.45, and proved that there were other goods included in the insurance besides theirs, and to prove that the vessel was seaworthy, they proved that she had on her trip *to* Baltimore brought a cargo of wheat in bulk, which was in good order so far as depended upon the vessel.

The defendant having waived all requisition on the plaintiffs to prove, that they had exhibited to defendant due preliminary proof of interest and loss before bringing the action, proved by an experienced ship-master, that bilge water is stagnant, accumulated by neglect of pumping when it is above the ceiling at the bottom of the vessel, but that there is always more or less in the bottom, between the ceiling and outer planking.    Upon cross-examination this witness proved, that where a vessel springs a-leak, the water so let in will mingle with the bilge water usually in the vessel, but that it will freshen the bilge water and take away the smell; and that if the bilge water came above the ceiling into the hold of the vessel, so as to damage the goods, it could only do so by the negligence and breach of duty of the captain in not having the vessel properly pumped.

The defendant then asked the court to instruct the jury, "that the plaintiffs are not entitled to recover in this cause, because they have offered no testimony of any loss by perils of the sea within the terms of the policy," which prayer the

court, (FRICK, C. J., and PURVIANCE, A. J.,) granted, and the plaintiffs excepted, and the verdict and judgment being against them, they appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON, MASON and TUCK, J.

*Henry Winter Davis* for the appellants.

The vessel was proved *seaworthy* when the goods were put on board and when she set out from Baltimore, from the fact that she had just brought *to* Baltimore a cargo of wheat in bulk, in good condition. The goods were properly packed, and after the voyage were found damaged in such a way as would lead one to infer that the cause was one of the perils insured against. The question then is, were the plaintiffs not entitled to ask a verdict from the jury that the damage came within the perils enumerated, or within the general clause, *"all other perils, losses?" &c.* As to the extent to which courts will go in construing the general clause, see 5 *Bing.*, *N. C.*, 519, *(35 Eng. C. L.*, 207.) 2 *Barn. and Ald.*, 315, *Fletcher vs. Inglis.* 7 *Eng. C. L.*, 55, *Philips vs. Barber.* 3 *Barn. and Ald.*, 398, *Butler vs. Wildman.* 5 *Eng. C. L.*, 324, 328. 5 *Maule. and Selw.*, 461, *Cullen vs. Butler.* 7 *Scott*, 507, *Devous vs. Anson.* 6 *Barn. and Cres.*, 19. 14 *Mees. and Welsb.*, 476. 5 *Mees. and Welsb.*, 405. 2 *Gill*, 365, *Geo. Ins. Co., vs. Dawson.* 2 *Arnould on Ins.*, 757, 842, 843. The loss here was analogous to that of perils of the seas, if not strictly within the technical meaning of those terms. Courts sometimes make presumptions from less evidence than that offered in this case. The springing of a leak without any assignable cause, the fact of the leak being proved by the presence of water in the vessel is sufficient to entitle the insured to recover under the insurance against the perils of the sea. 2 *Strange*, 1199. 1 *Johns. Rep.*, 241, *Patrick vs. Hallett and Browne.* If the goods were damaged by bilge water accumulating through the neglect of the captain, it was a loss for which the insurers are liable.

But it was error to confine the jury to one cause of loss, by perils of the sea, where there were other perils insured against and embraced by the evidence and issue. 3 *Pet.*, 222. 2 *Camp.*, 149. The court, by granting the prayer of the defendant, took from the jury all consideration of loss under the general clause of the policy. The prayer in fact took the whole case from the jury, and it should have been rejected for its generality. 9 *Gill*, 460.

*Charles F. Mayer* for the appellee.

There is no proof of stress of weather. No witnesses were examined to show that there was any particular storm at that time, or that other vessels then encountered bad weather. The goods were wet with bilge water which accumulated beyond the usual amount by the negligence of those on board. There is no direct proof of the seaworthiness of the vessel, and if goods are damaged by a leak, no stress of weather to cause the leak being shown, the vessel is to be presumed unseaworthy. 1 *Philips on Ins.*, 324. *Marshall on Ins.*, 160. Only perils or damages of *extraordinary* degree from the perils of the sea are insured against. 1 *Philips on Ins.*, 625, 634. It must be something out of the ordinary course. 1 *Caine's Rep.*, 234. 3 *Wash. C. C. Rep.*, 159. There is a distinction between this case and that of a vessel which has never been heard of. In such a case the presumption is, that she has been lost by extraordinary action of the elements—a presumption that results from the nature of the case, because there is no evidence to be obtained on the point.

Again, the proof does not show that the loss was within the average. The plaintiffs limit their actual damage to a sum under the *five per cent.*, and consquently, even if the county court erred in granting the prayer, the judgment will not be reversed, as the plaintiffs have not really been injured. 3 *G. & J.*, 450, Bosley *vs.* Chesapeake Ins. Co. 9 *G. & J.*, 439, Brooke *vs.* Planter's Bank. 2 *Pet.*, 354. 2 *Philip's on Ins.*, 499, 507.

LE GRAND, C. J., delivered the opinion of this court.

This is an action of covenant, instituted to recover the amount of damage done to certain goods on board the schooner Emory, during a voyage from Baltimore to Ware river, Virginia. The execution of the policy and property in the goods were proven, and that on reaching Ware river and unloading the vessel, certain boxes of goods were saturated with water and seriously damaged, and that grains of wheat were found in the folds of some of the goods; that the vessel on her voyage *to* Baltimore had brought a load of wheat, in bulk, in good condition so far as the vessel was concerned. *There was no direct proof of the seaworthiness of the vessel when she left Baltimore on her voyage to Ware river;* and the only fact, it is alleged, from which it might be inferred, was the safe delivery of the wheat in Baltimore.

On this state of facts, the court instructed the jury the plaintiffs were not entitled to recover, because they had offered no testimony of any loss by perils of the seas within the terms of the policy.

In all contracts of insurance the seaworthiness of the vessel is understood; there is, in fact, a warranty of it on the part of the insured. This condition, however, is only to be presumed until the contrary is shown, but when shown the conclusion of law is, that the policy never attached. The defectiveness of the vessel may be established by the underwriters in various modes, only one of which, however, it is necessary to notice under the facts in this case. It is laid down that if the vessel spring-a-leak, or becomes disabled, or some essential defect is discovered soon after the risk commences, without any apparent cause, from the perils within the policy, or rather when it satisfactorily appears that no accident can have happened to occasion the damage or defect, it is inferred she was defective at the beginning of the risk, and not seaworthy. 1 *Philips on Ins.*, 324.

In the case before us there is no proof whatever of any stress of weather, so far from it, some of the witnesses speak of the weather as mild. The plaintiffs below no doubt labor-

ed under disadvantage from the color of the crew which navigated the vessel, but the courts can only consider the case as presented to them. If there was no stress of weather to occasion a leak, and the vessel sprung-a-leak soon 'after she started on the voyage, the presumption arises to which we have referred, and the plaintiffs could not recover.

The case in 1 *Johnson's Reps.*, 241, was decided by a majority of the court on the peculiar facts which constituted it. In the case of *Talcott vs. The Commercial Insurance Company of New York*, 2 *Johns. Rep.*, 123, the case in 1 *Johnson* is fully reviewed, and it was there held, where a vessel, with a fair wind and moderate weather, and in the evening of the same day suddenly sprung-a-leak, in consequence of which she foundered, without any apparent cause or extraordinary accident to which the leak could be ascribed, in an action on a policy of insurance that the loss was to be presumed to have arisen from her not being seaworthy at the time she sailed, and that the insured were not entitled to recover.

In these cases it was proved that the vessels sprung-a-leak without any apparent cause, soon after they had left the port. In the present case the prayer assumes, that the damage was occasioned 'by a leak to be ascribed to the defectiveness of the vessel, and to no other cause. The jury would probably have found the fact to be as assumed by the prayers, but the court erred in taking that question from their consideration. The presumption of law is, that the vessel was seaworthy. Whether the evidence removed that presumption was for the jury and not for the court. *Ragan vs. Gaither*, 11 *Gill and John.*, 479. *Charleston Ins. Co. vs. Corner*, 2 *Gill*, 426, 427. *Grove vs. Brien.* 1 *Md. Rep.*, 438; and *Brown vs. Ellicott*, 2 *Md. Rep.*, 81.

*Judgment reversed and procedendo awarded.*